

**FILED**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MAR 2 4 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. DARREN EVANS, | ) ) ) | MAR 2 4 2008 |
| Petitioner, | ) ) | |
| v. | ) ) | No. 07 C 6937 |
| TERRY MCCANN, Warden, Stateville Correctional Center, | ) ) ) | The Honorable James B. Zagel, |
| Respondent. | ) ) | Judge Presiding. |

## TO THE CLERK OF THE UNITED STATES DISTRICT COURT

The following Exhibits A through Q to respondent's Motion to Dismiss, which was filed on March 24, 2008 in the above-captioned cause, are hereby filed with this Court:

Exhibit A:    Rule 23 Order, *People v. Evans*, No. 1-95-0295 (Ill.App. 1996);

Exhibit B:    Order, *People v. Evans*, No. 82367 (Ill. 1997);

Exhibit C:    Motion for Extension of Time to File for Post-Conviction Relief, *People v. Evans*, No. 91 CR 19351, Circuit Court of Cook County;

Exhibit D:    Order, *People v. Evans*, No. 91 CR 19351;

Exhibit E:    Motion to Respond, *People v. Evans*, No. 91 CR 19351, Circuit Court of Cook County;

Exhibit F:    Postconviction petition, *People v. Evans*, No. 91 CR 19351, Circuit Court of Cook County;

Exhibit G:    Memorandum of Orders, *People v. Evans*, No. 91 CR 19351, Circuit Court of Cook County;

Exhibit H:   Motion for Continuance to Re-File an Original Petition for Post-Conviction Relief, *People v. Evans*, No. 91 CR 19351, Circuit Court of Cook County;

Exhibit I:   Report of Proceedings, September 16, 1998;

Exhibit J:   Order dismissing postconviction petition, *People v. Evans*, No. 91 CR 19351;

Exhibit K:   Rule 23 Order, *People v. Evans*, No. 1-99-1786 (Ill.App. 2000);

Exhibit L:   Order, *People v. Evans*, No. 90448 (Ill. 2001);

Exhibit M:   Petition for Postconviction Relief, *People v. Evans*, No. 91 CR 19351, Circuit Court of Cook County;

Exhibit N:   Order dismissing successive postconviction petition, *People v. Evans*, No. 91 CR 19351;

Exhibit O:   Rule 23 Order, *People v. Evans*, No. 1-01-0173 (Ill.App. 2001);

Exhibit P:   Order, *People v. Evans*, No. 93047 (Ill. 2002); and

Exhibit Q:   Senate Bill 1440, 93rd General Assembly (Aug. 8, 2003).

March 24, 2008                          Respectfully submitted,

                                        LISA MADIGAN
                                        Attorney General of Illinois

                          By:      /s/ Sheri L. Wong
                                   SHERI L. WONG, Bar # 6291090
                                   Assistant Attorney General
                                   100 West Randolph Street, 12th Floor
                                   Chicago, Illinois 60601-3218
                                   TELEPHONE: (312) 814-3692
                                   FAX: (312) 814-2253
                                   EMAIL:swong@atg.state.il.us

FOURTH DIVISION
Filed: 10/31/96

NOTICE

The text of this order may be changed or corrected prior to the time for filing of a Petition for Rehearing or the disposition of the same.

1-95-0295

## IN THE APPELLATE COURT OF ILLINOIS
### FIRST JUDICIAL DISTRICT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) APPEAL FROM THE<br>) CIRCUIT COURT OF |
| Plaintiff-Appellee, | ) COOK COUNTY<br>) |
| v. | ) No. 91 CR 19351<br>) |
| DARREN EVANS, | ) HONORABLE<br>) MICHAEL B. BOLAN, |
| Defendant-Appellant. | ) JUDGE PRESIDING. |

### O R D E R

After a bench trial, defendant, Darren Evans, was found guilty of the first degree murders of Maurice Collier and Derrick Harris (720 ILCS 5/9-1(a)(1) (West 1994)) and the attempted first degree murder of Vincent Carlton (720 ILCS 5/8-4 (West 1994)). The trial judge later vacated defendant's murder conviction as to Collier. Codefendants Carl Jones and Kevin Golar were tried with defendant in simultaneous but severed bench trials which resulted in Jones' acquittal and Golar's conviction. Defendant was sentenced to 50 years' imprisonment for first degree murder and a 25 year consecutive sentence for attempted first degree murder. We affirm.

At trial, Vincent Carlton, the only surviving victim of the underlying incident, testified that he, along with defendant, Harris, Collier, and Golar sold drugs for an operation run by Jones. At around 5 p.m. on January 5, 1991, defendant, Harris,

EXHIBIT A

1-95-0295

Collier, Golar, and Carlton were in the area of 75th and Wood. According to Carlton, Collier got out of the car and approached defendant, asking when he and his crew were quitting work so that Collier and his group could begin their shift. Defendant yelled at Collier to get away from him, pulled a gun from his waist, and shot at the ground. Carlton pulled Collier away and back into the car. With defendant about five to ten steps away, Collier told Carlton he was going to get his gun.

A short time later that evening, defendant, Carlton, Collier, Harris, Golar, and Jones were all at Jones' house. Jones had everyone move to an alley to discuss the previous altercation. As they approached the alley, Collier said something to defendant. Defendant reached for his gun but, by that time, Collier had his gun up and defendant backed off. Jones wrestled Collier's gun away from him and put the bullet clip in his pocket. Collier said he would kill defendant if he ever pulled a gun on him again.

According to Carlton, the group proceeded on to Jones' sister's house. Jones left the others in the basement and went upstairs. He called for defendant to come up and talk to him. After talking to Jones alone for about five minutes, defendant came back downstairs and told Golar that Jones wanted to speak privately with him. Jones then announced that it was time to "go to work."

Carlton testified that defendant drove the group in Jones' van to an apartment at 4462 South Wentworth where the group sold drugs. Jones returned Collier's bullet clip during the ride. Carlton said

2

1-95-0295

they stood around in the apartment about fifteen minutes.  Jones
left to make a phone call, saying "you all take care of that.  I be
right back."  After Collier announced he was going with Jones,
Jones said "[y]ou all hold it up.  I be right back up."  After a
few minutes, Jones returned with Collier.

Carlton said the next thing he heard was gunshots.  Jones was
standing in the adjacent living room and defendant and Golar were
standing across from Carlton.  Carlton turned and saw Jones "pull
up a gun" which he identified at trial as a nine millimeter.  He
saw Golar shooting and then Collier fell to the ground.  Carlton
testified that defendant, who also had a nine millimeter, was
standing by the front door.

After Carlton heard the shots, he ran towards the front door.
Carlton said he saw defendant, whom he knew as "Pete," pull up his
gun.  Carlton turned and ran towards the pantry.  The following
colloquy then occurred between Carlton and the State:

"Q. When you turned off Pete where did you head?
A. I got shot.  He hit me in the back.  I ran towards
the back door and ran towards the pantry.
Q. You said you got shot in the back.  Did you see who
fired the shot or just feel it?
A. I saw a man shooting me.
Q. You saw a man shooting.  Did you know who the man
was?
A. Yes
Q. Who was it?
A. Pete."

Carlton testified that he stumbled into the pantry with Harris

3

1-95-0295

coming in shortly behind him. When he saw Golar enter the pantry with a gun, Carlton fell to the floor and "played dead." According to Carlton, Golar stood over him and shot his gun approximately five more times. Although Harris pleaded for his life, Golar shot him several more times and Harris fell over. Carlton then heard the gun click as if Golar had run out of ammunition.

Carlton said he remained in the pantry a few more minutes as he listened to people running out of the apartment. He then got up and unsuccessfully attempted to rouse Harris and Collier. When Carlton exited the building, he saw Golar by Jones' van. Golar tried to grab him but Carlton hit him and ran. He saw that Jones and defendant were also in the van. According to Carlton, Jones called out "Get him, get that nigger! Don't let that nigger get nowhere!" As defendant drove the van towards him, Carlton allegedly jumped a fence, ran across the Dan Ryan expressway, and continued running a few blocks more to an "el" station in search of help. Carlton said he saw defendant pull up to the "el" station in the van and then speed away.

The police arrived at the "el" station shortly thereafter. After informing the police of the other shooting victims, Carlton was driven to the apartment on Wentworth. He remembered speaking to a detective on the way to the apartment. Thereafter, he was transported by ambulance to a hospital. Carlton said he did not remember speaking to officers in the hospital that night. He recalled an officer showing him pictures of defendant and Jones the

4

1-95-0295

next day, both of whom he identified as the shooters.

On cross-examination, Carlton admitted that he was a drug user with four felony cases pending at the time of trial, three of which were for possession with intent to deliver. He admitted he had snorted heroin the day of the shooting. Carlton also acknowledged his previous violation of bail, two prior felony convictions in Mississippi, and a four year jail sentence for burglary. He said he was not offered, and did not expect, leniency on his pending cases in exchange for his testimony.

Detective Rossi testified that he responded to a call regarding a man shot on the "el" platform at 47th and the Dan Ryan expressway. He said Carlton was limping, his torso was bloodied, and he was frightened, nervous, and in obvious pain. According to Rossi, Carlton relayed the events of the shooting and took them to the crime scene. When Rossi asked Carlton to identify the perpetrators, Carlton named Jones.

Defendant presented a stipulation that Officer Bereta would testify that he interviewed Carlton on the evening of January 5, 1991. Carlton told Bereta that he and the two other victims drove in Jones' van to the location of the shooting. When they entered the apartment, five or six unknown black males opened fire on them. Carlton could not describe the weapons.

Detective O'Connor, who testified for the defense, said he interviewed Carlton in the trauma ward at the hospital on January 6, 1991. Carlton told O'Connor that he had gone to 4462 South

5

1-95-0295

Wentworth to "do drugs" and that Jones, Golar, and an "unknown black male" came in the apartment and started shooting.

Detective Caesar testified that he interviewed Carlton on January 6, 1991, while he lay on a gurney awaiting treatment at the hospital. Carlton identified photographs of defendant and Jones as the two individuals who were in the apartment when he, Harris, and Collier had been shot. He told Caesar that a person named Kevin also shot at him.

From the scene, the police recovered 13 cartridge casings, 4 live cartridges, 3 fired bullets, and 1 bullet fragment. It was stipulated that the 13 cartridge casings were all fired from the same gun and that the weapon was never recovered. All of the bullet and bullet fragments recovered were fired from the same weapon with the exception of one bullet which was not suitable for classification. The parties also stipulated that Collier was shot three times and Harris was shot nine times.

The trial court found defendant guilty of the first degree murders of Collier and Harris and the attempted first degree murder of Carlton. The court later vacated defendant's murder conviction as to Collier. After determining that defendant was eligible for consecutive sentences, the trial court sentenced defendant to 50 years' imprisonment on the first degree murder conviction and a consecutive term of 25 years on the attempted first degree murder conviction. This appeal followed.

Defendant first argues that he was not proven guilty beyond a

6

1-95-0295

reasonable doubt since (1) the trial court specifically found Carlton, the sole eyewitness, to be incredible, (2) the court did not properly recall the evidence, and (3) the judgment was inconsistent with the acquittal of codefendant Jones.

In reviewing a claim that evidence was insufficient to support a criminal conviction, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. People v. Young, 128 Ill. 2d 1, 48-49, 538 N.E.2d 453 (1989). A reviewing court is not to substitute its judgment on questions involving the weight of the evidence or the credibility of witnesses for that of the trier of fact who heard the evidence presented and observed the demeanor of the witnesses. People v. Novotny, 41 Ill. 2d 401, 412, 244 N.E.2d 182 (1968). Moreover, a conviction will not be reversed unless the evidence is so unreasonable, improbable or unsatisfactory as to justify a reasonable doubt of the defendant's guilt. Young, 128 Ill. 2d at 51.

Defendant argues that his conviction rested largely on the testimony of Carlton, who the trial judge found to be incredible, impeached, and lacking in moral judgment. The trial judge found Carlton to be "a disreputable type character" who had little fear of moral sanctions and was consistently impeached during the trial. In his findings, the trial judge discussed the distinction between truth and accuracy and concluded that Carlton's testimony, if taken

7

1-95-0295

alone, was not truthful. However, the judge found that, when taken in context with other corroborating evidence, "*** even if (Carlton) is a person who is not a high-minded person, they know they are shot, and they can relate they are shot; that's accuracy."

Carlton's testimony was indeed corroborated in part by the police officers' testimony and the physical evidence from the scene of the shooting. Although his various accounts of the incident were inconsistent, we do not conclude that Carlton was totally impeached. Carlton told Officer Bereta that five or six unknown black males were in the apartment and opened fire on him and the other victims. However, Officer Bereta spoke to Carlton outside the building on Wentworth while he was receiving medical treatment and was waiting to be taken away in an ambulance. Carlton was undoubtedly frightened and nervous, was suffering from gunshot wounds, and was surely uncomfortable supplying the names of the perpetrators.

Carlton told Officer Rossi that Jones had done the shooting. However, Officer Rossi spoke to Carlton briefly at the "el" station, in the police car on the way to Wentworth, and at the apartment on Wentworth. He said Carlton was bleeding from gunshot wounds, in pain, and obviously frightened because he did not want to go back to the scene. We find it feasible that Carlton, in his state of fear and shock, would not be capable or willing to fully relate the details of the shooting.

Carlton apparently told Officer O'Connor that he and the other

8

two victims had gone to "do drugs" and that Jones, Golar, and "an unknown male black" came into the apartment and started shooting. Again, Carlton was questioned in awkward and difficult circumstances. O'Connor said he spoke with Carlton while he was being treated in the trauma ward at the hospital. Carlton was on a gurney surrounded by doctors and nurses and O'Connor was only allowed to question him briefly.

Detective Caesar testified that when he spoke to Carlton in the hospital the day after the incident, Carlton readily identified photographs of Jones, Golar, and defendant as the perpetrators. Given the circumstances of Carlton's interviews, we conclude that the inconsistencies in naming his aggressors did not render his testimony unreliable.

Defendant also argues that the ballistic evidence contradicted Carlton's testimony that defendant, Jones, and Golar all participated in the shooting. The stipulated ballistic evidence showed that all the bullet and bullet fragments recovered from the scene were fired from the same weapon except for one which could not be classified. Defendant argues that whoever shot Carlton also shot Collier and Harris; thus, the evidence pointed to Golar since Carlton testified that Golar did most of the shooting.

However, the ballistic evidence is not determinative of defendant's guilt under a theory of accountability. A person is legally accountable for the conduct of another if "[e]ither before or during the commission of an offense, and with the intent to

9

1-95-0295

promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense."  720 ILCS 5/5-2(c) (West 1994); People v. Taylor, 164 Ill. 2d 131, 140, 646 N.E.2d 567 (1995).  Active participation is not a requirement for a finding of guilt under an accountability theory, as one may aid and abet without actively participating in the overt act.  Taylor, 164 Ill. 2d at 140.  A defendant may be found accountable for acts performed by another if defendant shared the criminal intent of the principal or if there existed a common criminal plan or purpose.  Taylor, 164 Ill. 2d at 140-41.

Although the trial judge could not determine beyond a reasonable doubt that either defendant or Golar actually shot Carlton, he found that they both actively participated in the incident with defendant blocking the door and Golar doing much, if not all, of the shooting.  The judge concluded that this participation rendered defendant responsible for the first degree murders of Harris and Collier and the attempted first degree murder of Carlton on an accountability theory, although the judge later vacated defendant's murder conviction as to Collier.

We agree that defendant's presence at the scene rose to a level beyond acquiescence in the shooting and that he shared a common purpose with the principal's actions.  Carlton's testimony reveals that, when the shooting began, defendant guarded the front door and held up a pistol while Golar shot at the victims.  Carlton

10

1-95-0295

further testified that defendant shot him as he ran toward the
pantry.   Carlton stated that defendant also drove the van which
followed him after he escaped from the apartment.   In any case, we
conclude that the act of guarding the door against the victims'
escape while brandishing a weapon was sufficient in itself to find
defendant guilty under an accountability theory.

Defendant further argues that his conviction must be reversed
since the evidence of his guilt was substantially the same as that
against Jones who was acquitted.   However, the failure to convict
one codefendant does not necessarily raise a reasonable doubt as to
the guilt of the other codefendant unless the evidence against both
defendants is identical.   People v. Jakes, 207 Ill. App. 3d 762,
767, 566 N.E.2d 422 (1990).   Indeed, "[t]he slightest difference in
the evidence can be sufficient to support different verdicts."
Jakes, 207 Ill. App. 3d at 767 (the fact that a codefendant, whose
role was different from that of her armed codefendant, was
acquitted during a joint but severed bench trial did not bar the
codefendant's conviction on the same charges).

A close review of the record reveals differences in the
evidence against defendant and Jones.   In his findings, the trial
judge   evaluated   the   evidence   against   defendant   and   Jones
separately.   The judge emphasized Carlton's testimony regarding the
altercations between defendant and Collier prior to the fatal
shooting incident, in particular, the instance where defendant
pulled out a gun and shot at the ground.   We agree that this

11

1-95-0295

evidence showed defendant possessed an operable gun and had no reluctance in using it.    Although Jones broke up one of the altercations between Collier and defendant, he was not an aggressor.

Carlton also testified that he saw defendant raise his gun and block the front door to the apartment on Wentworth so that Carlton could not escape.    In contrast, Carlton said that Jones "[j]ust pull(ed) the gun that was all."    Carlton stated that he saw defendant shoot him in the back as he turned to run to the pantry. Carlton did not testify at trial that Jones shot anyone; he merely testified that Jones pulled out a gun after shots were fired by someone else in the apartment.

The trial judge cited Carlton's statement to O'Connor as evidence of defendant's accountability for Golar's actions. However, the judge apparently did not accept as sufficient evidence of guilt Carlton's statements to the officers that Jones was one of the shooters.    The trial court also found that Carlton's testimony that Jones shouted "[g]et him, get that nigger!  Don't let that nigger get nowhere!", which the trial court considered to be the most incriminating evidence against Jones, was impeached.  Although we might have ruled differently, a reviewing court cannot substitute its judgment of credibility for that of the trier of fact.  See People v. Wilson, 260 Ill. App. 3d 364, 374, 632 N.E.2d 114 (1994).

Defendant also contends that the trial judge's failure to

12

1-95-0295

correctly recall the evidence led him to erroneously convict
defendant and acquit Jones. However, a close reading of the
judge's findings reveals that he considered in detail the testimony
and other evidence at trial. He reviewed and acknowledged the
incriminating evidence as to Jones and found that it was either
impeached or speculative and did not establish guilt beyond a
reasonable doubt. As to defendant, the trial judge correctly
recalled Carlton's testimony regarding defendant's role. He stated
that he could not determine whether defendant or Golar actually
shot Carlton but that, in any case, defendant was accountable given
his role in the incident. We cannot say in this instance that no
trier of fact could have found defendant guilty beyond a reasonable
doubt. People v. Collins, 106 Ill. 2d 237, 261, 478 N.E.2d 267
(1985).

Defendant next contends that his 50 and 25 year consecutive
sentences should be reduced. First, defendant argues that his
right to due process was violated where the trial court erroneously
based the sentence on consideration of the fact that two people
were killed when the court had already vacated defendant's
conviction for the murder of Collier. Defendant refers to the
following comments made by the trial judge at sentencing:

> "[You] participated in an activity that caused the death
> of a person, a human being, turned around to cause the
> death of a second being. ***
> ***
>
>     Two people will not have a future because they are

13

1-95-0295

> dead regardless of what kind of people they were, whether
> or not you like them or not, whether they are bad
> people."

However, the State points out that a complete reading of the
judge's comments reveals that he was talking generally about the
shooting incident and that, in sentencing, he only considered the
fact that defendant personally contributed to one death.
Specifically, the judge stated that "[a] person is dead in part
because of your actions and in part because of the actions of
others." We conclude the trial judge did not err in this regard.

Defendant next argues that the trial judge improperly
considered the facts implicit in the offense, namely, that death
occurred, and that great bodily harm occurred to Carlton. The
judge made the following comments:

> "The matters in aggravation are that there's serious
> harm. That's paragraph one. Yeah. Death. Grievous
> bodily injury to Vincent Carlton.
> The nature of the offense, murder, is aggravation in
> itself, very serious offense."

In People v. Saldivar, 113 Ill. 2d 256, 497 N.E.2d 1138
(1986), our supreme court held that it is improper for a court
imposing a sentence for voluntary manslaughter to rely upon the end
result of the defendant's conduct, the death of the victim, because
that factor is implicit in the offense of voluntary manslaughter
itself. Saldivar, 113 Ill. 2d at 272. The transcript suggests
that the trial court considered death as an aggravating factor in
the first degree murder of Harris. This was improper.

14

1-95-0295

However, a trial court's reliance upon an improper aggravating factor does not always necessitate remandment for resentencing. People v. Beals, 162 Ill. 2d 497, 509, 643 N.E.2d 789 (1994). Rather, a reviewing court must remand for resentencing only where it is unable to determine the weight given to an improperly considered factor. Beals, 162 Ill. 2d at 509. "Where it can be determined from the record that the weight placed upon the improperly considered aggravating factor was insignificant and that it did not lead to a greater sentence, remandment is not required." Beals, 162 Ill. 2d at 509-10.

The record here indicates that the trial judge did not place much emphasis on death as an aggravating factor but, rather, was making a sardonic point that death certainly entails serious harm. The judge placed more emphasis on other aggravating factors, particularly defendant's involvement in the drug trade. Viewing the sentencing remarks in their entirety, we conclude that any weight that the trial court placed on this factor was insignificant, and did not result in a greater sentence. See Beals, 162 Ill. 2d at 510.

As to the trial judge's comments regarding grievous bodily injury to Carlton, we note that attempted murder does not require bodily harm. People v. Bales, 108 Ill. 2d 182, 196, 483 N.E.2d 517 (1985). This factor was not implicit in the offense and the judge could properly consider it as an aggravating factor. Thus, we reject defendant's argument that we remand for resentencing.

15

1-95-0295

Defendant next contends that his sentences were excessive and that the trial judge ignored his rehabilitative potential. A trial court's sentencing decision is entitled to great deference and weight. People v. Ward, 113 Ill. 2d 516, 526, 499 N.E.2d 422 (1986). Absent an abuse of discretion by a trial court, a sentencing decision shall not be altered upon review. A trial judge is in the best position to determine the appropriate sentence since he can consider firsthand a defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. People v. Streit, 142 Ill. 2d 13, 19, 566 N.E.2d 1351 (1991).

The record reveals that the trial judge carefully balanced the mitigating and aggravating factors involved before imposing sentence. In mitigation, the judge considered that defendant had worked as an electrician, had been married with two children, and had demonstrated some evidence that he was unlikely to commit another crime. The trial court also considered various factors in aggravation, namely, defendant's prior conviction for felony theft and his involvement in the drug trade. Upon review of the record, we hold that defendant's sentence was not an abuse of discretion.

Defendant last contends that his 25 year consecutive sentence for attempted first degree murder should be vacated since the court mistakenly assumed the consecutive nature of the statute was mandatory. Section 5-8-4(a) of the Code of Corrections states that "[t]he court shall not impose consecutive sentences for offenses

16

1-95-0295

which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless, one of the offenses for which defendant was convicted was a Class X or Class 1 felony and the defendant inflicted severe bodily injury, *** in which event the court shall enter sentences to run consecutively." 730 ILCS 5/5-8-4(a) (West 1994).

The record indicates that the murders of Harris and Collier and the attempted murder of Carlton were part of a single course of conduct. Defendant blocked off the exit while Golar, and possibly defendant, shot Harris, Collier, and Carlton until all were presumed dead. Defendant did not change his criminal objective while participating in this event.

Where, as here, the conduct is part of a single course of conduct, consecutive sentences are mandatory if "one of the offenses was a Class X or Class 1 felony and the defendant inflicted severe bodily injury ***." 730 ILCS 5/5-8-4(a) (West 1994). Thus, if the attempted first degree murder of Carlton involved severe bodily injury, then the trial court was compelled to sentence defendant to consecutive terms of imprisonment. Carlton was shot five times at close range. Three bullets remained in his body at the time of trial. We cannot say the trial court erred considering this severe bodily injury.

For the foregoing reasons, we affirm the decision of the circuit court of Cook County. As part of our judgment, we grant

17

1-95-0295

the State's request and assess defendant $100 as costs for this appeal. People v. Nicholls, 71 Ill. 2d 166, 374 N.E.2d 194 (1978).

Affirmed.

HOFFMAN, P.J., with THEIS and O'BRIEN, JJ., concurring.

82367

**ILLINOIS SUPREME COURT
JULEANN HORNYAK, CLERK**
SUPREME COURT BUILDING
SPRINGFIELD, ILLINOIS 62701
(217) 782-2035

January 29, 1997

Hon. Jim Ryan
Attorney General, Criminal Appeals Div.
100 West Randolph St., 12th Floor
Chicago, IL 60601

No.  82367 – People State of Illinois, respondent, v. Darren
          Evans, petitioner.  Leave to appeal, Appellate
          Court, First District.

    The Supreme Court today DENIED the petition for leave to
appeal in the above entitled cause.

The mandate of this Court will issue to the Appellate Court
on February 20, 1997.

EXHIBIT B

IN THE CIRCUIT COURT OF COOK COUNTY
CRIMINAL DIVISION

JUL 31  6 09 PM '97

Darren Evans,                    )
                Petitioner       )
                                 )
-vs-                             )        No._____
                                 )
People of the State of Illinios)
                Respondant        )
                                 )

---

## MOTION FOR EXTENSION OF TIME
## TO FILE FOR POST-CONVICTION RELIEF

Now comes Petitioner, Darren Evans respectfully moves this
court to enter an order granting petitioner an extension of
time to file for Post-Conviction Relief, pursuent to 721 ILCS
5/122-1. In support petitioner states:

1) Petitioner was convicted on (1) count of murder, and
   (1) count of attempted murder following a bench trial,
   and sentence to 75yrs in the penitentary, under Indict-
   ment No. 91-CR-19351.
2) Notice of appeal was filed November, 1994, Docket No.
   95-295. Appeallate Court affirm the conviction.
3) Notice of leave to Appeal to the Supreme Court was
   filed, however, the attorney withdrew from the case
   before any breif was filed.
4) Petitioner is not repersented by and attorney.
5) Petitioner has been unable to make the necessary invest-
   igation and research in order to prepare the Petition
   for Post-Conviction Relief, in order to meet the due
   date herein, (July 28, 1997) Because of the forgoing
   reasons:

   a) Petitioner has a 7th grade educational level, and is
      unable to understand his Constitutional Rights
      afforded him by the U.S. Constitution, and need
      assistance in reading and preparing the necessary
      documents.

   b) Petitioner was seeking the assistance through the
      use of Eugene Horton, a license paralegal who worked
      in the Law Libary where petitioner is incarcerated
      at.

   c) As of April 1996 the institution where petitioner is
      incarcerated has been on a continuos lockdown, which
      disrupted all law libary session. The lockdown was
      recently lifted on January 1997.

EXHIBIT C

    d) However, Mr. Horton was transfered during the lockdown
       leaving with petitioner trail transcripts, appeal
       breif and the drafted issues petitioner intended to
       raise in his Post-Conviction Petition.

    e) Petitioner is seeking the assistance of the Department
       of Correction to locate Mr. Horton in attempt to
       retreive Petitioner legal documents. As of yet, the
       department of correction has not given me any imfo-
       mation as to Mr. Horton whereabouts.

6) Petitioner need more time within which to prepare and file
   his post-conviction petition. Petitioner beleive that his
   constitutional rights has been violated, and if given the
   opportunity to prove so will result in a new trial.

WHEREFORE, Petitioner respectfully request an extension of time
not to exceed 90 days from the date the court appoints to file a
Post-Conviction Relief Petition.

                                *Darren Evans B-61256*
                               Petitioner, pro se

                          Darren Evans  #B-61256
                          PO. Box 112            —
                          Stateville C.C.
                          Joliet, Illinios 60434

C65

STATE of ILLINIOS    )
                     )    ss
COUNTY OF COOK       )

IN THE CIRCUIT COURT
OF COOK COUNTY

Darren Evans,              )
            Petitioner,    )
                           )    Case No. _____
-vs-                       )
                           )
People of the State of Illinios,   )
            Respondant,    )

NOTICE OF FILING

TO: Aurial Pucincki
    Clerk of the circuit court
    2650 S. California Ave. 5th floor
    Chicago, Illinios 60608

    (2) copies

PLEASE take notice that on the 27th day of July, 1997, I have
filed through the U.S. mail, with the above named parties the
below mentioned documents.

(2) COPIES , 'MOTION FOR EXTENSION OF TIME TO FILE A POST-
CONVICTION  PETITION.'

C66



**AURELIA PUCINSKI**
CLERK OF THE COURT

**HILDA WHITTINGTON**
CHIEF DEPUTY CLERK
(312) 890-3140

**DONALD GALLIAN**
ASSISTANT CHIEF DEPUTY CLERK
(312) 890-3678

# OFFICE OF THE CIRCUIT COURT CLERK OF COOK COUNTY

## CRIMINAL BUREAU
CRIMINAL DIVISION
Room 526
2650 S. California Ave
Chicago, Illinois 60608
(773) 869-3140
FAX (773) 869-4444

DATE __SEPTEMBER 24, 1997__

DARREN EVANS   B 61256

STATEVILLE C.C.

P.O. BOX 112

JOLIET, IL 60434

CASE NUMBER:  91 CR 19351-01

DEAR __MR. EVANS__ :

PLEASE BE ADVISED THAT ON __9/4/97__ ,THE

HONORABLE JUDGE __BOLAN__ DENIED YOUR MOTION FOR

__EXTENSION OF TIME TO FILE FOR P.C. RELIEF__

_____ ,

IF YOU HAVE ANY FURTHER QUESTIONS OR REQUESTS, PLEASE

FEEL FREE TO NOTIFY OUR OFFICE AT YOUR EARLIEST CONVEINIENCE.

SINCERELY,

*Hilda Whittington*

HILDA WHITTINGTON
CHIEF DEPUTY CLERK
CRIMINAL DIVISION

TJL

ADDITIONAL COMMENTS (IF ANY) :

_____

_____

_____




Printed on RECYCLED PAPER

PRINTED WITH
SOY INK

**MISSION STATEMENT**
The mission of the office of the Clerk of the Circuit Court of Cook County is to serve the citizens of Cook County and the participants in the judicial system in a timely, efficient and ethical manner. ... ... information and court records will be provided with courtesy and cost efficiency.

EXHIBIT D

IN THE CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT-CRIMINAL DIVISION

|  |  |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS,<br><br>     Plaintiff,<br><br>     vs.<br><br>Darren Evans,<br><br>     Defendant. | )<br>)<br>)  Criminal<br>)<br>)  No. 91-19351<br>)<br>)  Charge:  Murder<br>)<br>)<br>) |

## NOTICE OF FILING AND PROOF OF SERVICE

TO;     Cook County States Attorney, Dick Devine
        300 Daly Center
        Chicago, Illinois 60602

PLEASE TAKE NOTICE that on March 26, 1998, I have filed with Clerk of the Circuit Court of Cook County a Motion to Respond to Petition for Post Conviction Relief with accompaning affidavit in the above entitled cause.

Darren Evans, B-61256
pro-se
P.O. Box 112
Joliet, Illinois
60434-0112

The undersigned, being first duly sworn upon oath, deposes and states that a copy of the above notice and motion was served upon the above named party on March 26, 1998, by depositing such copy in the United Stated mail at the Stateville Correctional Center, located at P.O. Box 112, Joliet, Illinois 60434-0112, in an envelope bearing sufficient postage.

Darren Evans

SUBSCRIBED and SWORN to
before me this 26 day of March, 1998.

_____
        NOTARY PUBLIC

"OFFICIAL SEAL"
MONICA E. HUIZENGA
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 1/7/2002

EXHIBIT E         C68

IN THE CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT-CRIMINAL DIVISION

| | |
|---|---|
| THE PEOPLE OF THE<br>STATE OF ILLINOIS,<br><br>       Plaintiff,<br><br>       vs.<br><br>Darren Evans,<br><br>       Defendant. | Criminal<br><br>No. 91-19351<br><br>Charge:   Murder |

## MOTION TO RESPOND

    Now comes the Movant, Darren Evans, pro-se, and moves this
Honorable Court to reply to movant's Petition For Post-Conviction
Relief filed October 21, 1997 and in support thereof states that:

1.    Movant is the defendant in the above entitled cause of
action.

2.    Movant filed a Petition for Post-Conviction with this
Honorable Court on October 21, 1997.

3.    Movant has twice since the original filing made demand
of the Clerk of the Cook County Circuit Court for
information as to the disposition of said filing.

4.    Movant's demands have met with silence and the Clerk of
Circuit Court of Cook County has failed to respond.

5.    This Honorable Court is required under the Illinois Post
Conviction Hearing Act to respond to movant's filing
within ninty (90) days of said filing.

    WHEREFORE, for the foregoing reasons, movant respectfully
requests that this Honorable Court respond to his Petition For
Post Conviction Relief as required by Illinois State Statute.

                         _Darren Evans · B-61256_

                         Darren Evans B-61256
                         pro-se
                         P.O. Box 112
                         Joliet, Illinois
                         60434-0112

SUBSCRIBED and SWORN to before

me this 26th day of March, 1998.

_Monica E Huizenga_
      NOTARY PUBLIC

C69

"OFFICIAL SEAL"
MONICA E HUIZENGA
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 1/7/2002

## AFFIDAVIT

I, Darren Evans do hereby swear under oath and penalty of
perjury that all facts as brought forth in the accompaning Motion
To Respond are true and correct to the best of my knowledge.

*Darren Evans B-61256*

Darren Evans
B-61256
P.O. Box 112
Joliet, Illinois
60434-0112

SUBSCRIBED and SWORN to before
me this 26 day of March  1998.

*Monica E. Huizenga*
NOTARY PUBLIC

"OFFICIAL SEAL"
MONICA E. HUIZENGA
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 1/7/2002

C70

1st Judicial District. Fourth Division. Cook County, Illinois
People of the state of Illinois, plaintiff

vs.                                           case no: 91 CR 19351

Darren Evans, defendant

## Pro Se Post Conviction Petition

Now comes, the defendant, Darren Evans, pro se,
and moves this honorable court to grant him relief
from judgement pursuant to 255 ILCS 5/122-1, and
grant him a new trial based on the unconstitutional
deprivations of the defendant, Darren Evans First, Fourth,
Fifth, Sixth, Ninth, and Fourteenth Amendment (to the
United States Constitution) rights.

In support of this Pro se Petition the defendant,
Darren Evans, states as follows:
1) That he is the defendant in this cause of action.
2) That the defendant, Darren Evans, was found guilty,
by a judge, of: First degree murder (6cts.) and attempted
First degree murder (2 ct.), on February 17, 1994, and
sentenced to a term of 50 years on the First degree
murder charge, (one count of first degree murder having
been dropped) and a consecutive term of 25 years for
the attempted murder charge.
3) The defendant, Darren Evans, filed a timely appeal,
(no. 95-295, 4th Div.), such appeal having been denied
on 10-31-96, in the First Judicial District, Fourth Division,
Cook County, Illinois.
4) The defendant, Darren Evans filed leave to Appeal
to the Illinois Supreme Court, and such petition was
denied by the Illinois Supreme Court on January,
1997.
5) Counsel for the defendant, coerced the defendant, Darren
Evans, by assuring the defendant, Darren Evans, that by
adopting the ideology and opinions of defendants counsel,
in regards to whether a jury or bench trial should have
been held in this matter, the defendant, Darren Evans's
chances of obtaining justice would be heightened in
the event that the defendant, elected to have a bench trial.

6) The aforementioned "assurance", on the part of counsel for the defendant, Darren Evans, invaded and siezed, the defendant, Darren Evan's rights of: liberty of conscience; trial by jury; effective assistance of counsel; due process of law; as guaranteed the defendant, Darren Evans, by and through the United State's Constitution's First, Fifth, Sixth, and Fourteenth Amendments; such siezure of the rights of the defendant, Darren Evans, being expressly prohibited by the Fourth Amendment to the United States Constitution.

7) The State having full knowledge that the grand jury in this cause, had been informed that eyewitness Vincent Carlton would testify that "co-defendant Kevin Ecler did the shooting, and defendant, Darren Evans stood by the door," should not have allowed the defendant, Darren Evans, to stand trial, where eyewitness Vincent Carlton testified, in defendants trial, on cross-examination, that " the defendant, Darren Evans, shot him," and the state knew that the grand jury had not been informed of the latter perjured testimony of eyewitness, Vincent Carlton.

8) Both counsel for the defendant, and the state, failed to secure the defendant, Darren Evan's right to not be tried where perjury permeates the indictment, and the prosecutor has knowledge of such perjury; in furtherance the defendant, Darren Evans, was denied effective assistance of counsel, for such counsel's failure to seek the court's protection of the defendant Darren Evan's right to be tried without the state's knowing use of perjured testimony; and the state fell short of its duty of good faith, for prosecuting the defendant, Darren Evans where the prosecutor knew that perjury permeated the indictment against the defendant Darren Evans, wherefore the defendant, Darren Evans was denied his Fifth, Sixth, and Fourteenth Amendments (to the United States Constitution) rights, in this regard.

9) Appellate counsel for the defendant, Darren Evans, failure to include the above mentioned issues in the defendant, Darren Evan's direct appeal, rendered

the defendant, Darren Evans, assistance of appellate
counsel ineffective, and further denied the defendant,
Darren Evans, rights secured to him by the Sixth
and 14th Amendments to the United States Constitution.
10) The court, counsel for the defendant Darren Evans,
at both the trial and appellate levels, as well as the state,
failed to protect the defendant Darren Evans right to
be found guilty, upon the state's proving the defendant
guilty beyond a reasonable doubt, thusly the defendant,
was denied effective assistance of counsel, as guaranteed
him by the Sixth Amendment to the United States Constitution,
and due process of law, in accordance with the Fourteenth
Amendment to the United States Constitution, where
the trial judge specifically stated that he "was
not convinced beyond a reasonable doubt that the
defendant Darren Evans had shot Vincent Carlton,"
nor was it ever stated that the defendant Darren
Evans shot anyone else.
11) The Court unconstitutionally deprived the defendant,
Darren Evans, of his presumption of innocence based
on the judge's assertion that the defendant, Darren
Evans, "could" be found guilty under the accountability
theory, whereby the defendant Darren Evans, was
deprived due process of law as guaranteed him
by the Fourteenth Amendment to the United States
Constitution.
12) The defendant Darren Evans, was denied his Fourth
Amendment (to the United States Constitution) rights, where
the First Fifth Sixth and Fourteenth Amendment (to
the United States Constitution) rights, were sieced, by
both trial and appellate counsels for the defendant Darren
Evans, the court, and the prosecutor, in the above-listed
unconstitutional manners.
13) The defendant, Darren Evans, alleges that his presumption
of innocence should not befall to a judge's assertion that a
defendant could be found guilty of a charge, especially where
such charge was not sustained by a grand jury, nor was the

charge an object of the states argument.

14) The defendant, Darren Evans, further alleges that the state should not have allowed the defendant Darren Evans, to be tried where the state had learned that material perjury had permented the indictment, and jeopardy had not attatched.

15) The defendant, Darren Evans, contends that the constitutional errors and deprivations herein claimed, attributed to an unconstitutional verdict of guilt, and that reversal of such conviction is the sole remedy available to the defendant, Darren Evans, by this court.

Wherefore the defendant Darren Evans requests that this court reverse the conviction entered against him, and award him a new trial in this cause.

respectfully submitted,

Darren Evans, defendant
prose litigant

The defendant, Darren Evans, deposes and states, that the aforewritten is true and correct, in substance and in fact, to the best of his knowledge and belief.

Darren Evans, defendant
prose litigant
Darren Evans

Subscribed and sworn to
before me, this 15th day
of October, 1997.
Tonne Flowers
Notary Public

"OFFICIAL SEAL"
TONNE FLOWERS
Notary Public, State of Illinois
My Commission Expires 2/28/01

THE PEOPLE OF THE STATE OF ILLINOIS VS.    CASE NO. *9ICR19351-01*

| DATE | *DARREN EVANS* | PAPERS FILED |
|------|------|------|
|  |  | INDICTMENT/INFORMATION FILED IN THE CLERK'S OFFICE |
|  |  | PRES. JUDGE ASSIGNMENT DATE: _____ |
|  |  | BAIL PREVIOUSLY SET $ |
|  |  |  |
|  |  |  |
|  |  |  |

| DATE | JUDGE | ORDERS ENTERED |
|------|-------|----------------|
|  |  | NO ARRAIGNMENT |
|  |  | ASSIGNED TO JUDGE _____ |
| 8-24-98 | *Clerk* | RE: PETITION FOR POST CONVICTION RELIEF FILED *to be heard in room 101 out to dept 01 on 9-16-98* |
| 9-16-98 | *Fitzgerald* | *J. Bilaw* / *Mot to Rejds PC - Danes* |
| 9-17-98 | Clerks office | A letter of denial, certified report of disposition was mailed to DARREN F. EVANS #B 61256, STATEVILLE CORRECTIONAL CENTER, P.O. BOX 112, JOLIET, ILLINOIS  60434-0112 |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

EXHIBIT G

| DATE | JUDGE | ORDERS ENTERED |
|------|-------|----------------|
| 4-29-98 | Bolan | P.P. DNP (EVANS) M/D 7-8-98 x |
| 7-8-98 | Bolan | Previous Order of 3/21/97 to stand. |
| 8-24-98 | Clerk's | Post-Conviction Pet. filed Hearing Date assigned 9-16-98 |
| 9-16-98 | Bolan | (P.P. DNP (Evans) Post-Conviction Pet. Denied |
| 9-17-98 | Clerk | P.P. DNP notification sent to Dept. |
| 10-21-98 | Clerks office | Areport of proceedings was mailed to DARREN EVANS #B 61256, STATEVILLE CORR. CENTER, P.O. BOX 112, JOLIET, ILLINOIS 60434 |

M14

IN THE CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT-CRIMINAL DIVISION

THE PEOPLE OF THE          )
STATE OF ILLINOIS,         )
                           )   Criminal
          Plaintiff,       )
                           )   No. 91-19351
vs.                        )
                           )   Charge:  Murder
Darren Evans,              )
                           )
          Defendant.       )
                           )

### NOTICE OF FILING AND PRROF OF SERVICE

TO;   The Honorable Dick Devine
      Cook County State's Attorney
      300 Daly Center
      Chicago, Illinois  60602


     PLEASE TAKE NOTICE that on August _10th_, 1998, I have filed
with the Clerk of the Circuit Court of Cook County a "Motion for
Continuance to Re-file an Original Petition for Post Conviction
Relief, with the accompaning affidavit in the above entitled
cause.

                          _Darren Evans_ B-61256
                          Darren Evans, B-61256
                          pro-se
                          P.O. Box 112
                          Joliet, Illinois  60434-0112

---

The undersigned, being first duly sworn upon oath, deposes and
states that a copy of the above notice and motion was sereved
upon the above named party on August _10th_, 1998, by depositing
such copy in the United States Mail at the Stateville Correctional
Center, located at P.O. Box 112, Joliet, Illinois  60434-0112, in
an envelope bearing sufficient first class postage.

                          _Darren Evans_ B-61256
                          Darren Evans

SUBSCRIBED AND SWORN to
before me this _10th_ day of August, 1998.

_Edmund Victor Butkiewicz_
     NOTARY PUBLIC

                              ┌─────────────────────────────────┐
                              │        OFFICIAL SEAL            │
                              │   EDMUND VICTOR BUTKIEWICZ      │
                              │ NOTARY PUBLIC, STATE OF ILLINOIS│
                              │ MY COMMISSION EXPIRES 1-7-2002  │
                              └─────────────────────────────────┘

          EXHIBIT H

                              /?#/

IN THE CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT-CRIMINAL DIVISION

THE PEOPLE OF THE                )
STATE OF ILLINOIS.               )
                                 )    Criminal
            Plaintiff,           )
                                 )    No. 91-19351
    vs.                          )
                                 )    Charge:  Murder
Darren Evans,                    )
                                 )
            Defendant.           )
                                 )

## MOTION FOR CONTINUANCE TO RE-FILE AN ORIGINAL PETITION FOR POST-CONVICTION RELIEF

Now comes the Movant, Darren Evans, pro-se, and moves this
Honorable Court to allow the movant an order granting him time to
prepare and re-file his original petition for post-conviction relief,
as a continuance to movant's original filing of the same and in
support thereof states that:

1.   Movant is the defendant in the above entitled cause of
action.

2.   Movant on October 21, 1997 entered into the United States
Mail at the Stateville Correctional Center located at P.O. Box 112
Joliet, Illinois 60434-0112, one original and four copies of his
original petition for post-conviction relief.

3.   Movant enclosed a note to the Clerk of the Circuit Court
of Cook County asking that a file stamped copy of the petition be
returned to movant for his files and that no copy was returned
despite movant's demand for the same.

4.   Movant on March 26th, 1998 filed with this Honorable Court
a "Motion to Respond" to movant's petition in accordance with

1

provisions of the Illinois Post-Conviction Hearing Act.

5. No response was made to movant's motion.

6. Movant's mother contacted the Clerk of the Circuit Court of Cook County and was notified that the clerk's office had no record of the original filing and that the movant should re-file a copy of the original petition.

7. Movant does not possess a copy of the original filing because his copy was not returned by the clerks office despite demand of the same at the time of the original filing.

8. Movant has Constitutional issues that demand litigation through the provisions of the Illinois Post-Conviction Hearing Act and does not wish said issues to be dismissed as time barred when his original petition was filed within the statutory time lines as demanded by the act.

9. Movant attaches an affidavit attesting to the truth of all statements and facts as brought forth in this motion.

10. Movant asks this Honorable Court to allow him time to adequately prepare another petition for filing to secure his valuable rights as given by the United States Constitution and the Constition of the State of Illinois.

WHEREFORE, for the foregoing reasons, movant asks this Honorable Court to grant him a continuance for the filing of a second original petition for Post-Conviction relief.

Darren Evans, B-61256
pro-se
P.O. Box 112
Joliet, Illinois  60434-0112

SUBSCRIBED and SWORN to before

me this _10th_ day of August, 1998.

NOTARY PUBLIC

OFFICIAL SEAL
EDMUND VICTOR BUTKIEWICZ
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 1-7-2002

2

STATE OF ILLINOIS      )
                       )
COUNTY OF WILL         )


### AFFIDAVIT


Now comes the affiant, Darren Evans, and does hereby swear under oath and penalty of perjury that the facts as listed in the attached "MOTION FOR CONTINUANCE TO RE-FILE AN ORIGINAL PETITION FOR POST-CONVICTION RELIEF" are a true and accurate representation of the facts as they have occurred.

_Darren Evans B-6125_
Darren Evans, B-61256
P.O. Box 112
Joliet, Illinois 60434-0112


SUBSCRIBED and SWORN to before
me this _6th_ day of August, 1998.

_Edmund Victor Butkiewicz_
NOTARY PUBLIC

OFFICIAL SEAL
EDMUND VICTOR BUTKIEWICZ
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 1-7-2002

C74

1    STATE OF ILLINOIS   )
                         ) SS:
2    COUNTY OF C O O K   )

3

           IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
4                 COUNTY DEPARTMENT-CRIMINAL DIVISION

5

6
     DARREN EVANS,              )
7            Petitioner,        )
                                )   No. 91-CR-19351
8        vs.                    )
                                )   Charge:  Post-Conv.
9    THE PEOPLE OF THE          )
     STATE OF ILLINOIS,         )
10           Respondent.        )

11

12

13                  POST-CONVICTION PETITION

14                  REPORT OF PROCEEDINGS at the

15    hearing of the above-entitled cause, before the

16    Honorable MICHAEL B. BOLAN, on the 16th day of

17    September 1998.

18

19

20

21

22
      Annette M. Golab, CSR
23    Official Court Reporter
      2650 South California Avenue
24    Chicago, Illinois 60608

EXHIBIT I

C75

1

1                          <u>INDEX</u>

2
      Date of Hearing:   September 16, 1998
3
      Page Numbers:   1 to 4
4

5                        <u>PROCEEDINGS</u>

6

7                                          <u>PAGE</u>

8

9     Ruling on Post-Conviction Petition      3

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

*C76*
2

1          THE COURT:  Darren Evans.  The Court has examined

2     the post-conviction.  The matters raised there are

3     res judicata on appeal, and there is no genuine issue

4     raised in the petition.  It is frivolous and patently

5     without merit.

6              The Court therefore dismisses the

7     post-conviction petition, and request for leave to

8     proceed in form of pauper is denied this 16th day of

9     September 1998.

10             Miss Reporter, prepare a transcript of that

11    and I will sign it and send it down to the defendant

12    in the penitentiary.  This petition was initially

13    filed August 11th.

14             Darren Evans is asking leave to refile the

15    post-conviction petition I dismissed a year ago.

16    Denied.

17

18             (Which were all the proceedings had at

19              the hearing of the above-entitled cause.)

20

21

22

23

24



```
 1    STATE OF ILLINOIS   )
                          ) SS:
 2    COUNTY OF C O O K   )

 3

 4

 5                  I, ANNETTE M. GOLAB, an Official Court

 6    Reporter in the Circuit Court of Cook County, County

 7    Department, Criminal Division, do hereby certify

 8    that I reported in shorthand the proceedings had at

 9    the hearing of the aforementioned cause; that I

10    thereafter caused the foregoing to be transcribed,

11    which I hereby certify to be a true and accurate

12    transcript of the proceedings had before the

13    Honorable MICHAEL B. BOLAN, Judge of said Court.

14

15

16

17

18

19                             Official Court Reporter

20

21    Dated this 6th day
      of October 1998.
22

23

24
```



IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT · CRIMINAL DIVISION

PEOPLE OF THE STATE OF ILLINOIS )
)      INDICTMENT NO.   91CR 19351-01
)
)      INDICTMENT FOR: POST CONVICTION
vs.                                         )
)
)
)
DARREN F. EVANS                     )

## CERTIFIED REPORT OF DISPOSITION

The following disposition was rendered before the Honorable Judge

MICHAEL J. BOLAN, ON SEPTEMBER 16, 1998, MOTION TO REFILE A

POST CONVICTION IS DENIED.

I hereby certify that the foregoing has been entered
of record on the above captioned case.

Date:          SEPTEMBER 17, 1998

AURELIA PUCINSKI , Clerk of the Circuit Court

AURELIA PUCINSKI, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
EXHIBIT J

FOURTH DIVISION
FILED: 09/21/00

No. 1-99-1786

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 91 CR 19351 |
| DARREN EVANS, | ) | Honorable Michael B. Bolan, Judge Presiding. |
| Defendant-Appellant. | ) | |

ORDER

Defendant Darren Evans appeals from an order of the circuit court of Cook County summarily dismissing his petition for post-conviction relief. Defendant contends that because the trial court failed to dismiss his petition within 90 days as mandated by section 122-2.1(a)(2) of the Post-Conviction Hearing Act ("Act") (725 ILCS 5/122-2.1(a)(2) (West 1996)), this matter must be remanded for appointment of counsel and further proceedings under the Act.

Following a bench trial, defendant was convicted of the first degree murder of Derrick Harris and attempted first degree murder of Vincent Carlton and was sentenced to consecutive terms of 50 years and 25 years respectively. His convictions and

EXHIBIT K

1-99-1786

sentences were affirmed on direct appeal on October 31, 1996. People v. Evans, 284 Ill. App. 3d 1118 (1996)(unpublished order under Supreme Court Rule 23).

On July 30, 1997, defendant filed a pro se motion for an extension of time in which to file a petition for post-conviction relief, stating that because of his limited education and the fact that the prison was on a continuous lockdown from April 1996 to January 1997, he was unable to file his petition before the due date of July 28, 1997.  On September 4, 1997, the trial court denied his motion.

On March 26, 1998, defendant filed a pro se "Motion to Respond" alleging that he had filed a pro se post-conviction petition on October 21, 1997, to which the clerk of the court failed to respond.  On August 24, 1998, defendant filed a pro se motion "For Continuance to Re-file an Original Petition for Post-conviction Relief" asserting that on October 21, 1997, he had mailed an original and four copies of a post-conviction petition to the clerk of the circuit court of Cook County with a letter of direction to mail him a stamped copy.  In his August 24 motion, defendant stated that he never received a stamped copy of his petition from the court, nor did he possess a copy of his own. His mother subsequently learned that the clerk of the court had no record of the original petition.  His motion requested time in

2

1-99-1786

which to prepare another petition.  On September 16, 1998, the trial court stated that it had examined the post-conviction petition, found that the matters raised therein were <u>res judicata</u> and therefore the petition was frivolous and patently without merit.  The court then dismissed the petition, also noting that in effect, defendant was asking leave to refile a petition which the court had dismissed the previous year.

Despite defendant's assertion in his August 24, 1998, motion that he had no copy of the petition, an unstamped copy of a handwritten post-conviction petition dated October 21, 1997, is contained in the record.  The record contains no other documents which could be construed as a petition.

On appeal, defendant contends that because the trial court did not dismiss his <u>pro se</u> petition within 90 days of the date of filing as mandated by section 122-2.1 of the Post-Conviction Hearing Act (Act) (725 ILCS 122-2.1 (West 1996)), his case must be remanded for further proceedings.

Sections 122-2.1(a) and (b) of the Act state as follows:

> "(a) within 90 days after the filing and docketing of each petition the court shall examine such petition and enter an order thereon pursuant to this Section.

\* \* \*

3

1-99-1786

> (b) If the petition is not dismissed
> pursuant to this Section, the court shall
> order the petition to be docketed for further
> consideration in accordance with Sections
> 122-4 through 122-6."

Where a trial court fails to conduct the initial stage of the post-conviction process within 90 days, the court may not summarily dismiss the petition but must appoint counsel and docket the matter for further proceedings.  People v. Noel, 291 Ill. App. 3d 541, 543 (1997).

As we have already noted, the record contains no evidence that defendant actually filed a petition for post-conviction relief on October 21, 1997, nor is there a file-stamped copy of the petition.  Instead, the half-sheet in the record appears to provide the only proof that a petition may have been filed.  The entry on August 24, 1998, states: "petition for post-conviction relief filed to be heard *** on 9-16-98."  In the transcript for the hearing on September 16, 1998, less than 90 days after the alleged filing of defendant's petition, the court commented that the petition was originally filed on August 11, but the record contains no evidence that a petition or pleading was filed on that date.  The court also stated:

> "The Court has examined the post-conviction

4

1-99-1786

> [_sic_]. The matters raised there are _res_
> _judicata_ on appeal, and there is no genuine
> issue raised in the petition.  It is
> frivolous and patently without merit."

Accordingly, based on the contents of the record, we find that the trial court made its determination well within the 90-day limit provided in the statute.

For these reasons the judgment of the circuit court of Cook County is affirmed.

Affirmed.

HOFFMAN, J., with HARTMAN, P.J., and SOUTH, J., concurring.

5

90448

SUPREME COURT OF ILLINOIS
CLERK OF THE COURT
SUPREME COURT BUILDING
SPRINGFIELD, ILLINOIS 62701
(217) 782-2035



January 29, 2001

Hon. Jim Ryan
Attorney General, Criminal Appeals Div.
100 West Randolph St., 12th Floor
Chicago, IL 60601

No.  90448 - People State of Illinois, respondent, v. Darren
            Evans, petitioner.  Leave to appeal, Appellate
            Court, First District.

     The Supreme Court today DENIED the petition for leave to

appeal in the above entitled cause.

     The mandate of this Court will issue to the Appellate Court

on February 20, 2001.

EXHIBIT L

IN THE

CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT-CRIMINAL DIVISION

**RECEIVED**
OCT 3 1 2000
CLERK OF THE CIRCUIT COURT
CRIMINAL DIVISION

DARREN EVANS, )
     Petitioner, )

**FILED**

V. )
    )

NOV 0 1 2000

THE PEOPLE OF THE )
STATE OF ILLINOIS, )
   Respondent. )

AURELIA PUCINSKI
CLERK OF THE CIRCUIT COURT
CRIMINAL DIVISION

CASE NO: 91-CR-19351

P.C. NO:_____

The Honorable Michael B.
Bolan, Presiding Judge.

---

PETITION

FOR

POST-CONVICTION RELIEF

---

Respectfully Submitted By:

Darren Evans, pro se
Reg. No. B-61256
Stateville c.c.
P.O. Box 112
Joliet Ill., 60434

APPOINTMENT OF COUNSEL REQUESTED

EXHIBIT M

IN THE
CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT–CRIMINAL DIVISION

OCT 3 1 2000

CLERK OF THE CIRCUIT COURT
CRIMINAL DIVISION

| | |
|---|---|
| DARREN EVANS, <br>     Petitioner, <br><br> V. <br><br> THE PEOPLE OF THE <br> STATE OF ILLINOIS, <br>     Respondent's. | CASE NO: 91–CR–19351 <br><br> P.C. NO:_____ <br><br> The Honorable Michael B. <br> Bolan, Presiding Judge. |

## PETITION FOR POST-CONVICTION RELIEF

NOW COMES the petitioner, Darren Evans, pro se, and moves this Honorable Court to vacate his unconstitutional sentence obtained in the Circuit Court of Cook County, Illinois, in the above entitled cause; pursuant to The Post-Conviction Hearing Act, 725 ILCS 5/122-1 et. seq. (West 1996).

The petitioner submits that his consecutive sentences of fifty (50) and twenty-five (25) years imposed pursuant to 730 ILCS 5/5-8-4(a) are each void in their entirety and therefore must be vacated.

In support thereof, Darren Evans states:

## HISTORY OF THE CASE

Darren Evans, (Hereafter "Petitioner" or Evans) was charged by indictment with two counts of First degree Murder and one count of attempted murder (C 20 to 31).

The petitioner was charged along with two co-defendants, Carl Jones and Kevin Golar, in relation to the alleged murders of Derrick Harris and Maurice Collier, and the alleged attempted murder of Vincent Carlton (C 20 to 31)

The petitioner, along with his two co-defendants, each received simultaneous but severed bench trials, over which the Honorable Michael B. Bolan presided (Tr. p.2).

Judge Bolan acquitted Carl jones of the charges against him, and initially found the petitioner, Darren Evans, guilty. However, in a subsequent post-trial motion for acquittal, the trial court vacated Evans' conviction for the murder of Maurice Collier.

The petitioner was subsequently sentenced to fifty (50) years for the standing first degree murder conviction and twenty-five (25) years for the attempted murder conviction. Judge Bolan ordered that each of the sentenced imposed were to be run consecutively to one another (C. 9-10).

Darren Evans subsequently filed a timely notice of appeal in the Circuit Court which was docketed in the First District Appellate Court, Fourth Division, under number 95-295.

The First District Appellate Court, Fourth Division, affirmed Evans' conviction and sentence in an order issued on October 31, 1996.

The petitioner subsequently filed a Petition For Leave To Appeal to the Illinois Supreme Court which was docketed under number 82367

The Supreme Court subsequently denied said petition, without a hearing.

Darren Evans filed a Petition For Post Conviction relief in the Circuit court, pursuant to 725 ILCS 5/122-1

et. seq. (West 1996), which was subsequently denied on September 16, 1998.

Darren Evans subsequently appealed the Circuit Courts' denial of his Post Conviction Petition to the First District Appellate Court. This appeal was docketed under number 1-99-1786.

The First District Appellate Court affirmed the Circuit Courts' ruling in an order filed on September 21, 2000.

The petitioner subsequently filed a Petition For Leave To Appeal to the Illinois Supreme Court regarding the Appellate Courts decision, and that petition is currently pending.

Darren Evans also filed a Petition For A Writ Of Habeas Corpus in the Northern District Court of Illinois.

On June 30, 1998, the Federal District Court judge issued an order dismissing the petition without prejudice, and granting Mr. Evans leave to re-file the petition at the conclusion of pending state court litigation.

Darren Evans comes, now, pursuant to the Post-Conviction Hearing Act, 725 ILCS 5/122-1 et. seq. (West 1996), and moves this Honorable Court to vacate his unconstitutional consecutive sentence.

Evans submits that the statutory provision authorizing consecutive sentences in Illinois (730 ILCS 5/5-8-4(a).) is unconstitutional in its entirety.

The petitioner further states:

## STANDING

The petitioner, Darren Evans, respectfully submits that he has standing to bring this second Post-Conviction Petition where he is alleging that the sentences imposed by the trial court are each void in their entirety.

In this petition, Mr. Evans contends that the fifty (50) and twenty five (25) year consecutive sentences imposed by the trial court pursuant to 730 ILCS 5/5-8-4(a) are each void where the statutory provision mandating those consecutive sentences is unconstitutional.

The Illinois Supreme Court has established that a constitutional challenge to a statute can be "raised at any time", People v. Wooters, 188 Ill.2d 500, 510 (1999). See also People v. Bryant, 128 Ill.2d 448, 539 N.E.2d 1221 (1990).

Additionally, the Supreme Court has held that an unconstitutional statute is void ab initio, which means that it is "in legal contemplation, as though no such law had ever been passed", People v. Zeisler, 125 Ill.2d 42, 531 N.E.2d 24, 28 (1988).

In Illinois, a void judgement may be attacked "at any time", either collaterally or directly, People v. Wade, 116 Ill.2d 1, 506 N.E.2d 954 (1987); People v. Arna, 168 Ill.2d 107, 658 N.E.2d 445, 448 (1995).

Because the statutory provision under which the petitioner received his consecutive sentences was effectively non-existent at the time Evans was sentenced under that provision, the sentence may be attacked at any time, including in this Petition

for Post-Conviction relief filed pursuant to 725 ILCS 5/122-1 et. seq. (West 1996). See; Arna, Bryant, Wooters, Zeisler, and Wade, Id.

The contentions contained in this petition are properly before this Honorable Court pursuant to the aforementioned Supreme Court decisions, and are therefore cognizable as a matter of Illinois Law.

Additionally, Mr. Evans submits that any delay in the filing of this Post Conviction petition is not due to his "culpable negligence", but is a result of the timing of the United States Supreme Courts decision in Apprendi v. New Jersey, 530 U.S. ____, 120 S.Ct 2348 (2000), which the petitioner relies on to bring the claim contained in this petition.

When Apprendi was announced by the Supreme Court in June of 2000, Mr. Evans' deadline for filing a Post Conviction petition pursuant to The Post Conviction Hearing Act, 725 ILCS 5/122-1, had already lapsed.

Any delay in the filing of the instant petition is not due to Darren Evans' "culpable negligence". 725 ILCS 5/122-1 et. seq.

RETROACTIVE APPLICATION
OF
APPRENDI V. NEW JERSEY

In this Petition For Post-Conviction Relief, Evans contends that Section 1005-8-4(a) of Ill.Rev.Stat. 1991, Ch. 38 [Now 730 ILCS 5/5-8-4(a)], is unconstitutional.

In making this contention, the petitioner relies on the recent United States Supreme Court decision in Apprendi v. New Jersey, 530 U.S. ____, 120 S.Ct. 2348 (2000).

The petitioner respectfully submits that he is entitled to full retroactive application of this decision because 1) The case does not announce a "new rule of constitutional law" which would preclude application of the decision to cases on collateral review; and 2) Assuming arguendo that Apprendi is a new rule of constitutional law, it would nonetheless be applicable where it alters our understanding of the bedrock procedural elements essential to the fairness and accuracy of criminal proceedings, and, if considered to be a new rule, it is a watershed rule of criminal procedure implicating the fundamental fairness and accuracy of the proceedings such that it is implicit in the concept of ordered liberty.

In Apprendi, the United States Supreme Court held that the constitution requires that any fact that increases the prescribed range of penalties (other than prior convictions) must be alleged in the indictment, submitted to the jury and proven beyond a reasonable doubt. "It is unconstitutional for the legislature to remove from the jury the assessment of facts, other than the fact of a prior conviction, that

(6)

increases the prescribed range of penalties to which a criminal defendant is exposed, and such facts must be established by proof beyond a reasonable doubt". Apprendi, 530 U.S. at ____, 120 S.Ct. at 2362-63.

Darren Evans contends that the application of this decision is proper, because the Apprendi decision does not announce a "new rule" as defined by the United States Supreme Court in Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060 (1989), and the Illinois Supreme Court in People v. Moore, 177 Ill.2d 421, 686 N.E.2d 587 (1997); and People v. Flowers, 138 Ill.2d 218, 561 N.E.2d 674 (1990).

In Teague, supra, the United States Supreme Court provided clear procedures for determining retroactive application of new decisions to cases on collateral review.

First, the high court held that a case announces a new rule if the result was "not dictated by precedent existing at the time a defendant's conviction became final", and that a case does not announce a new rule if it simply has applied a well-established constitutional principle to govern a case which is closely analogous to those which have been previously considered in prior law. Teague v. Lane, 489 U.S. at 301; People v. Moore, 686 N.E.2d at 593.

In People v. Flowers, 138 Ill.2d 218, the Illinois Supreme Court adopted the United States' Supreme Courts reasoning in Teague for state collateral review. Flowers, Id at 237.

In People v. Moore, 177 Ill.2d 421, 686 N.E.2d 587 (1997), the Illinois Supreme Court decided that if a case

does not announce a "new rule" as defined by Teague, defendant's are permitted to rely on the new decision subsequent to their convictions. Id at 594.

If a new decision does, however, constitute a new rule as defined by the United States Supreme Court, then defendants are precluded from relying on the decision for collateral review unless the decision falls within one of two narrow exceptions. Teague v. Lane, 489 U.S. at 305-306; People v. Moore, 177 Ill.2d at 425.

The petitioner submits that Apprendi v. New Jersey, 530 U.S. ____, 120 S.Ct. 2348 (2000), is not a new rule of criminal procedure as defined by the United States and Illinois Supreme Courts. The decision in Apprendi was dictated by precedent existing at the time the defendant's conviction became final, and simply applied a well-established constitutional principle to govern a case which is closely analogous to those which have been previously considered in prior case law. See Teague, 489 U.S. at 301; Moore, 686 N.E.2d at 593; and Penry v. Lynaugh, 492 U.S. at 314, 109 S.Ct. at 2944 (1989).

The petitioner also submits to this Honorable Court that if Apprendi were to, in fact, be considered a "new rule" for purposes of retroactive application, he would nonetheless be entitled to the use of the decision because Apprendi falls within one of the two exceptions to the prohibition of new rule application on collateral review.

Assuming arguendo that this Honorable Court finds Apprendi to be a new rule, the petitioner contends that it is still

aplicable to the case at bar, because "full retroactivity
is given to new rules that alter our understanding of the
bedrock procedural elements essential to the fairness and
accuracy of a criminal proceeding". <u>Teague v. Lane</u>, 489 U.S.
288, 312; <u>Sawyer v. Smith</u>, 497 U.S. 227, 242-243 (1990).

The <u>Apprendi</u> rule of notice and jury finding proof
beyond a reasonable doubt is a watershed rule of criminal
procedure, if considered to be a new rule, implicating the
fundamental fairness and accuracy of the proceeding such that
it is implicit in the concept of ordered liberty. <u>Teague</u>,
489 U.S. at 311, 315.

The United States Supreme Court recognizes the "reasonable
doubt standard" as a prime instrument for reducing the risk
of factual error, providing "concrete substance for the presumption
of innocence -- that bedrock 'axiomatic and elementary' principle
whose 'enforcement lies at the foundation of the administration
of criminal law'" and is "indispensable because it 'impresses
on the trier of fact the necessity of reaching a subjective
state of certitude of the facts in issue'" <u>Ivan v. City of
New York</u>, 407 U.S. 203, 204-205 (1972), Citing <u>In re Winship</u>,
397 U.S. 358 (1970).

In <u>Ivan</u>, the Court held that <u>Winship</u> was fully retroactive
because the major purpose of the constitutional standard of
proof beyond a reasonable doubt announced in <u>Winship</u> was to
"overcome an aspect of criminal trial that substantially impairs
the truth-finding function". Id at 205. See also <u>Henkerson
v. North Carolina</u>, 432 U.S. 233 (1977). (Holding <u>Mullany v.</u>

(9)

v. Wilbur, 421 U.S. 684 (1975) fully retroactive for the same
reasons).

It should also be noted that a Federal District Court
in Minnesota has held Apprendi to be fully retroactive because
it falls under the second exception to the Teague rule. U.S.
v. Murphy, 2000WL 114078 *3-5 (No. 4-95-1038. DSD/FLN D. MINN.
8/7/00).

The rule announced in Apprendi, including the requirement
of proof beyond a reasonable doubt of sentencing enhancing
facts, serves the same purpose of reducing the risk that defendants
will be subject to lengthy prison terms based on factual error.
Without the protections of Apprendi, serious questions can
be raised about the accuracy of enhanced sentences received
by defendants who do not have the benefit of notice and jury
determination upon proof beyond a reasonable doubt of any
fact subjecting them to an increased punishment.

The Apprendi decision is not a new rule of law, as
defined by the United States and Illinois State Supreme Courts.

Even if Apprendi were to be ruled a new rule, it is
still retroactive where it falls within one of the two exceptions
to the general prohibition of application of new rules to
collateral review.

Darren Evans should be afforded the application of
the Apprendi decision.

ARGUMENT

> ILLINOIS' CONSECUTIVE SENTENCING
> STATUTE IS UNCONSTITUTIONAL WHERE
> IT VIOLATES A DEFENDANTS RIGHTS TO
> THE DUE PROCESS OF LAW AND NOTICE
> AND JURY TRIAL GUARANTEES OF THE
> U.S. CONSTITUTION: WHERE IT PERMITS
> AN ENHANCED PENALTY BASED ON FACTS
> NOT ALLEGED IN THE INDICTMENT, SUBMITTED
> TO A JURY OR PROVEN BEYOND A REASONABLE
> DOUBT.

[As an initial matter, the petitioner, Darren Evans, respectfully submits to this Honorable Court that he is not now in possession of any of his sentencing transcripts. The Illinois Department of Corrections has lost these papers over the years of Evans confinement, and the petitioner has been diligent in his attempts to obtain them from the Department. All of his efforts have been in vain. Evans makes all cites to the record in this argument through the aid of his appellate briefs.]

At sentencing in this case, the Honorable Michael Bolan imposed a fifty (50) year term for Evans' first degree murder conviction, and a consecutive twenty-five (25) year term for his attempted murder conviction (Tr. p. 570 to 575).

The trial court ordered these sentences run consecutively pursuant to Illinois statutory consecutive sentencing provision, Ill.Rev.Stat. 1991, ch. 38, Sect. 1005-8-4(a). [Now 730 ILCS 5/5-8-4(a) West 1999)].

That statutory provision provides:

" the court shall not impose consecutive sentences
for offenses which were committed as part of
a single course of conduct during which there
was no substantial change in the nature of the
criminal objective, unless, one of the offenses
for which the defendant was convicted was a
class X or class 1 felony and the defendant
inflicted severe bodily injury ............
in which event the court shall enter the sentences
to run consecutively."
Ill.Rev.Stat.1991, Ch. 38, Sect. 1005-8-4(a).

Sentencing under Section 5-8-4(a) requires a finding
that the offenses were committed during a single course of
conduct during which there was no substantial change in the
nature of the criminal objective, and that the defendant inflicted
severe bodily injury. 730 ILCS 5/5-8-4(a); See People v. Bole,
155 Ill.2d 188, 613 N.E.2d 7140 (Ill. 1993); holding that
the application of 5-8-4(a) is only appropriete where the
offenses were committed during a single course of conduct.
see also People v. Wittenmeyer, 151 Ill.2d 175, 601 N.E.2d
735 (1992); People v. Curry, 178 Ill.2d 509, 687 N.E.2d 877
(Ill.1997). [holding same as Bole].

Additionally, in order to operate the implication of
5-8-4(a) for s.offenses committed during a single course of
conduct, the court must find, inter alia, that the defendant
inflicted severe bodily injury. (Sect. 1005-8-4(a)).

The fact that Sect. 5-8-4(a) permits the trial court
to make such a finding of fact to increase the petitioners
sentence beyond the prescribed statutory maximum for the offense
committed, violates both the due process clause and the notice
and jury trial guarantees of the United States Constitution.
Amdts. V, VI, and XIV.

Pursuant to <u>Apprendi v. New Jersey</u>, 530 U.S. ____,
120 S.Ct 2348 (2000), Sect. 1005-8-4(a) is unconstitutional
where it allows an enhanced penalty based on a finding of
fact not alleged in the indictment, submitted to the jury,
and proven beyond a reasonable doubt.

In <u>Apprendi</u>, the defendant complained that a New Jersey
statute subjecting him to an increased penalty upon a finding
by the sentencing court by a preponderance of the evidence
that the offense was racially motivated, was unconstitutional.
The Supreme Court concluded that its disposition of the issue
was foreshadowed by its decision in <u>Jones v. United States</u>,
526 U.S. 227 (1999).

<u>Jones</u> involved a federal car-jacking statute, which
provided for an increased sentence of not more than 25 years
if the severe bodily injury resulted from the offense, although
car-jacking ordinarily was punishable by a sentence of not
more than 15 years. The Supreme Court concluded that the due
process and jury trial guarantees of the fifth and sixth amendments
required that the fact of severe bodily injury be charged
in the indictment, proven beyond a reasonable doubt and submitted
to a jury for its verdict, before the defendant could be subject
to the increased penalty based on that fact.

In <u>Apprendi</u>, the Supreme Court held that the state
statute subjecting the defendant to an increased penalty,
based on a bench finding of the qualifying fact by a preponderance
of the evidence, similarly violated the defendants right to
due process and jury trial. The court recognized that it was

permissible for judges to exercise discretion in imposing
a sentence within the range prescribed by statute based on
consideration of factors related both to the offense and the
offender. 530 U.S. at ____, 120 S.Ct. at 2358. If, however,
the defendant faces punishment more severe than the statutory
maximum he would receive if punished according to the facts
reflected in the jury verdict alone, the fact that increased
the penalty for the crime must be submitted to a jury and
proved beyond a reasonable doubt. Id at 2364-65. Because the
statute challenged in Apprendi did not contain these safeguards,
the court concluded that it was unconstitutional.

> " It is unconstitutional for a legislature
> to remove from the jury the assessment of
> facts that increase the prescribed range
> of penalties to which a criminal defendant
> is exposed. It is equally clear that such
> facts must be established beyond a reasonable
> doubt."
> Apprendi, 530 U.S. at ____, 120 S.Ct. at
> 2365.

Pursuant to Apprendi, the absence from Sect 1005-8-
4(a) of the factual finding by the jury that the crimes were
committed during a single course of conduct and that the petitioner
inflicted severe bodily injury renders that provision un-
constitutional.

The petitioner, Darren Evans, respectfully submits
that Section 5-8-4(a) is unconstitutional in its entirety
where it allows for an enhanced penalty based on facts (Severe
bodily injury and single course of conduct), that are not
alleged in the indictment, submitted to a jury and proved
beyond a reasonable doubt.

Because Section 1005-8-4(a) is unconstitutional, it is thereby void ab initio. Mr. Evans is therefore entitled to have his consecutive sentence vacated, and concurrent terms of imprisonment imposed.

Darren Evans submits that he has standing to challenge the constitutionality of Sect. 5-8-4(a) because he is directly affected by its provisions. See County Court v. Allen, 442 U.S. 140, 154-55, 99 S.Ct. 2213, 2223 (1979); and People v. Mayberry, 63 Ill.2d 1, 6, 345 N.E.2d 97, 100, cert. denied, 429 U.S. 828 (1976).

It should finally be noted that the First District Appellate Court of Illinois has recently ruled Sect. 5-8-4(a) unconstitutional for all of the foregoing reasons. People v. Clifton, No's 1-98-2126, 1-98-2384 Cons. 1st Dist. September 29, 2000.

## CONCLUSION

Ill.Rev.Stat., 1991, Ch. 38, Sect. 1005-8-4(a) is un-constitutional pursuant to <u>Apprendi v. New Jersey</u>, 530 U.S. ____, 120 S.Ct. 2348.

It is unconstitutional where it allows for an enhanced penalty based on the facts that the crimes were committed during a single course of conduct, and that the defendant inflicted severe bodily injury when these facts are not alleged in the indictment, submitted to a jury and proven beyond a reasonable doubt. Amdts. V, VI, and XIV.

The application of <u>Apprendi</u> to the instant case is proper because <u>Apprendi</u> does not constitute a "new rule" as defined by the Illinois and United States Supreme Courts, and if it were to be considered a new rule, it would nonetheless be applicable where is falls within one of the two exceptions to the prohibition of retroactive application of new rules.

Darren Evans is therefore entitled to have his consecutive sentences vacated, and to have concurrent sentences imposed.

WHEREFORE, the petitioner, Darren Evans, pro se, respectfully prays that this Honorable Court vacate his unconstitutional sentence, and order his terms of imprisonment to be run con-currently.


Respectfully Submitted,


DARREN EVANS, PRO SE
REG. NO. B-61256
stateville c.c.
p.o. box 112
JOLIET ILL., 60434

STATE OF ILLINOIS,   )
                       ) SS
COUNTY OF WILL.     )

## AFFIDAVIT

I, Darren Evans, being first duly sworn upon my oath, do hereby depose and state, under the penalty of perjury, that all of the facts, statements and information contained in the attached document is true and correct in substance and fact, to the best of my knowledge.

Darren Evans B-61256

**AFFIANT**

SUBSCRIBED and SWORN to before me

on this 25 day of October , 2000.

Joann M. Dombrow

NOTARY PUBLIC

OFFICIAL SEAL
JOANN M. DOMBROW
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 12-18-2002

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - CRIMINAL DIVISION

PEOPLE OF THE STATE OF ILLINOIS       )
                                      )
                                      )
                                      )       CASE NO.
                  VS.                 )
                                      )            91CR 19351-01
          DARREN EVANS                )
                                      )

## CERTIFIED REPORT OF DISPOSITION

The following disposition was rendered before the Honorable Judge MICHAEL BOLAN,

ON NOVEMBER 15, 2000, POST CONVICTION PETITION IS DENIED.

I hereby certify that the foregoing has been entered of record
on the above captioned case.

Date: _____ NOVEMBER 20, 2000

_Aurelia Pucinski_ MK

AURELIA PUCINSKI, Clerk of the Circuit Court

CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

FILE/POSTCONVICTION3.WP

EXHIBIT N

FOURTH DIVISION
FILED: 11/15/01

NOTICE
The text of this order may be
changed or corrected prior to the
time for filing of a Petition for
Rehearing or the disposition of
the same.

No. 1-01-0173

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| | ) | |
| v. | ) | No. 91 CR 19351 |
| | ) | |
| DARREN EVANS, | ) | Honorable |
| | ) | Michael B. Bolan, |
| Defendant-Appellant. | ) | Judge Presiding. |

O R D E R

Following a bench trial, defendant Darren Evans was convicted of first degree murder and attempted first degree murder and sentenced to consecutive prison terms of 50 years and 25 years. On direct appeal, we affirmed that judgment and subsequently we affirmed the summary dismissal of defendant's pro se post-conviction petition. People v. Evans, No. 1-95-0295 (1996); People v. Evans, No. 1-99-1786 (2000) (unpublished orders under Supreme Court Rule 23). Defendant now appeals from the summary dismissal of his second pro se post-conviction petition as frivolous and without merit.

The public defender of Cook County, who represents defendant on appeal, has filed a motion for leave to withdraw as appellate counsel. A brief in support of the motion has been submitted pursuant to Pennsylvania v. Finley, 481 U.S. 551, 95 L. Ed. 2d

EXHIBIT O

1-01-0173

539, 107 S. Ct. 1990 (1987), in which counsel states that he has reviewed the trial record and concluded that there are no arguable bases for collateral relief.

We have carefully reviewed the record in this case and the aforesaid brief in compliance with the mandate of <u>Pennsylvania v. Finley</u> and find no issues of arguable merit.  Therefore, the motion of the public defender of Cook County for leave to withdraw as counsel is allowed and the judgment of the circuit court is affirmed.

Affirmed.

HOFFMAN, P.J., with HARTMAN and THEIS, JJ., concurring.

**SUPREME COURT OF ILLINOIS**
**CLERK OF THE COURT**
SUPREME COURT BUILDING
SPRINGFIELD, ILLINOIS 62701
(217) 782-2035

93047

April 3, 2002


Hon. Jim Ryan
Attorney General, Criminal Appeals Div.
100 West Randolph St., 12th Floor
Chicago, IL 60601


No.   93047 - People State of Illinois, respondent, v. Darren
                Evans, petitioner.  Leave to appeal, Appellate
                Court, First District.


     The Supreme Court today DENIED the petition for leave to

appeal in the above entitled cause.


     The mandate of this Court will issue to the Appellate Court

on April 25, 2002.


EXHIBIT P



2003 IL S.B. 1440 (SN)                                                    Page 1

2003 Illinois Senate Bill No. 1440, Illinois 93rd General Assembly (FULL TEXT -
STATE NET)

### ILLINOIS BILL TEXT

VERSION: Enacted

August 8, 2003
Dillard

AN ACT in relation to criminal law.

### TEXT:

Be it enacted by the People of the State of Illinois, represented in the
General Assembly:

Section 5. The Code of Criminal Procedure of 1963 is amended by changing Section 122-1 as follows:

(725 ILCS 5/122-1) (from Ch. 38, par. 122-1)

Sec. 122-1. Petition in the trial court.

(a) Any person imprisoned in the penitentiary who asserts that in the proceedings which resulted in his or her conviction there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both may institute a proceeding under this Article.

(b) The proceeding shall be commenced by filing with the clerk of the court in which the conviction took place a petition (together with a copy thereof) verified by affidavit. Petitioner shall also serve another copy upon the State's Attorney by any of the methods provided in Rule 7 of the Supreme Court. The clerk shall docket the petition for consideration by the court pursuant to Section 122-2.1 upon his or her receipt thereof and bring the same promptly to the attention of the court.

(c) No proceedings under this Article shall be commenced more than 6 months after the denial of a petition for leave to appeal or the date for filing such a petition if none is filed or more than 45 days after the defendant files his or her brief in the appeal of the sentence before the Illinois Supreme Court (or more than 45 days after the deadline for the filing of the defendant's brief with the Illinois Supreme Court if no brief is filed) or 3 years from the date of conviction, whichever is sooner, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence.

(d) A person seeking relief by filing a petition under this Section must specify in the petition or its heading that it is filed under this Section. A trial court that has received a petition complaining of a conviction or sentence that fails to specify in the petition or its heading that it is filed under this Section need not evaluate the petition to determine whether it could otherwise have stated some grounds for relief under this Article.

(e) A proceeding under this Article may not be commenced on behalf of a defendant who has been sentenced to death without the written consent of the defendant, unless the defendant, because of a mental or physical condition,

Copr. © West 2007 No Claim to Orig. Govt. Works



EXHIBIT Q

2003 IL S.B. 1440 (SN)                                                                              Page 2

2003 Illinois Senate Bill No. 1440, Illinois 93rd General Assembly (FULL TEXT - STATE NET)

is incapable of asserting his or her own claim.

(f) Only one petition may be filed by a petitioner under this Article without leave of the court. Leave of court may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure. For purposes of this subsection (f): (1) a prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings; and (2) a prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process. (Source: P.A. 89-284, eff. 1-1-96; 89-609, eff. 1-1-97; 89-684, eff. 6-1-97; 90-14, eff. 7-1-97.)

2003 IL S.B. 1440 (SN)

END OF DOCUMENT

Copr. © West 2007 No Claim to Orig. Govt. Works